IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CARL B. COX,

        Plaintiff,

v.                                            CIVIL ACTION NO. 3:11-0843

CABELL HUNTINGTON HOSPITAL, INC.,
a West Virginia corporation,
d/b/a CABELL HUNTINGTON HOSPITAL,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant Cabell Huntington Hospital ("CHH")'s Motion to Dismiss (ECF No. 8). For the following reasons, the Court **DENIES** the motion.

**I. Background**

On November 2, 2011, Plaintiff Carl B. Cox filed a claim in this Court under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd *et seq*. Cox alleges that on November 6, 2009, he presented to the emergency treatment facility at CHH with a severely commuted arm fracture and a pain level of 10 on a 1 to 10 scale. Cox alleges he was discharged from CHH without being adequately screened or stabilized, as required by EMTALA.

Defendant CHH moved to dismiss the claim, arguing that Plaintiff's claim is in reality a claim based on negligent medical care, and, therefore, Plaintiff must comply with the pre-suit requirements of the West Virginia Medical Professional Liability Act ("MPLA"), W. Va. Code §§55-7B-1 *et seq*. Specifically, Defendant argues that Plaintiff must provide a screening certificate of merit executed under oath by a qualified expert before filing this suit. Def.'s Mem. in Supp. Mot.

to Dismiss, ECF No. 6, at 2; *see also* W. Va. Code § 55-7B-6(b). Plaintiff responded that he did not plead, and does not intend to pursue, a state malpractice claim; therefore, the MPLA requirements do not apply to his suit.

## II. Standard

In ruling on a motion to dismiss, the factual allegations in the complaint must be taken in the light most favorable to the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993) ("In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."). However, the plaintiff must allege more than mere "labels and conclusions," and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. Plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## III. Analysis

At issue in this case is whether Plaintiff may proceed with a private action under EMTALA without receiving the screening certificate of merit required by the West Virginia MPLA. The Court concludes that he may.

The EMTALA imposes on hospital emergency rooms a limited duty to "screen all patients as any paying patient would be screened and to stabilize any emergency condition discovered." *Brooks v. Md. Gen. Hosp., Inc.*, 996 F.2d 708, 711 (4th Cir. 1993). It is not a federal malpractice act. *Baber v. Hosp. Corp. of Am.*, 977 F.3d 872, 880 (4th Cir. 1992) (the avowed purpose of EMTALA is "not to guarantee that all patients are properly diagnosed, or even to ensure that they

receive adequate care."). Congress instead intended EMTALA to address "patient dumping," the practice of refusing to provide emergency medical treatment to patients unable to pay, or transferring them before emergency conditions were stabilized. *Power*, 42 F.3d 851, 856 (4th Cir. 1994). EMTALA requires hospitals to screen and stabilize emergency patients, and provides a private cause of action for any person "who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section." 42 U.S.C. § 1395dd(d)(2)(A). A suit brought under this section is "a suit for enforcement federally-created right under federal question jurisdiction," *Brooks*, 996 F.2d at 714, and so the "elements of, and defenses to" the cause of action are defined by federal law. *Id*. Under the principals of federalism, "state conditions simply cannot be recognized as conditions precedent to the vindication of a federally created right," in the "absence of a federal statute's express or implied acceptance of the state based condition for federal liability." *Id*.

Two sections of EMTALA expressly incorporate state law, but neither accepts Defendant's proposed "state based condition for federal liability." *Id*. First, § 1395dd(d)(2)(A) states that an individual harmed by an EMTALA violation may "obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate." However, this provision clearly incorporates state law only as a measure of damages, and does not incorporate procedural requirements for pursuing an EMTALA action. *See Power*, 42 F.3d at 860 (stating that this section "expressly adopts state-imposed limitations *on damages*") (emphasis added); *Fotia v. Palmetto Behavioral Health*, 317 F. Supp. 2d 638, 644 (D.S.C. 2004) ("Instead of requiring the court to 'convert' Plaintiff's EMTALA cause of action into an analogous state law claim, the statute simply specifies that the damages allowed for EMTALA violations are

those damages available in personal injury claims in [the state]."). This section does not, therefore, incorporate the MPLA screening certificate requirement.

Second, EMTALA provides that "only state and local laws that directly conflict with the requirements of EMTALA are preempted." 42 U.S.C. § 1395dd(f); *The Matter of Baby K*, 16 F. 3d 590, 597 (4th Cir. 1994). Defendant argues that the West Virginia MPLA does not directly conflict with EMTALA, and, therefore, Plaintiff must comply with its requirements. Plaintiff claims violations of both the screening and stabilization requirements of EMTALA. The inquiry is thus whether the asserted requirements of the MPLA "directly conflict" with the private right of action for violation of either section. Although Defendant emphasizes only the screening certificate requirement of the MPLA, the certificate is just one of the statutory scheme's procedural requirements for pursuing a medical malpractice claim in West Virginia. Along with obtaining the certificate, West Virginia medical malpractice plaintiffs must, for example, file a notice of claim with all defendant providers, and obey specific time limits at various stages of bringing an action. *See* W. Va. Code § 55-7B-6(b).

These requirements directly conflict with the EMTALA private right of action and are therefore preempted. This result is directed by the Fourth Circuit's decision in *Power v. Arlington Hosp. Ass'n*, 42 F.3d at 856, which held that Virginia's pre-suit requirements for medical malpractice actions directly conflict with EMTALA, and its decision in *Brooks*, which expressed significant skepticism as to whether Maryland's pre-suit requirements for medical malpractice actions could be "tolerated" by EMTALA. 996 F.2d at 714. In *Power*, the court reasoned that the direct conflict arises because the timing requirements in state pre-suit procedures, and the time

-4-

consumed in complying with those procedures, has an adverse effect on EMTALA's statute of limitations. 42 F.3d at 866.

West Virginia's MPLA contains specific waiting periods, and therefore directly conflicts with EMTALA's statute of limitations. *See* W. Va. Code § 55-7B-6(b) ("At least thirty days prior to the filing of any medical professional liability action against a health care provider, the claimant shall serve . . . a notice of claim on each health care provider the claimant will join in litigation."). However, even if the Court considers only the screening certificate requirement, and not the wait period requirement (as Defendant appears to urge), the time involved in obtaining an expert and executing a certificate of merit under oath would also conflict with EMTALA through an adverse effect on EMTALA's statute of limitations. *See Brooks,* 996 F.2d at 175 (noting that the Maryland pre-suit requirement in that case—not a wait period, but an arbitration requirement—might conflict with EMTALA by its "adverse effect" on EMTALA's statute of limitations). *See also Holmberg v. Armbrecht*, 327 U.S. 392, 395 (1946) ("If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive."); *Vogel v. Linde*, 23 F.3d 78, 80 (4th Cir.1994) (strictly construing EMTALA's statute of limitations). Thus, the MPLA pre-suit requirements at issue in this case are preempted because they directly conflict with EMTALA through their adverse effect on EMTALA's statute of limitations.

Defendant briefly cites to one Second Circuit case, *Hardy v. New York City Health & Hosps. Corp.*, 164 F.3d 789, 794-96 (2d Cir. 1999), which held that New York's pre-suit requirements did not conflict with EMTALA. The Ninth Circuit also held that a state's pre-suit requirements do not directly conflict with EMTALA. *Draper v. Chiapuzio*, 9 F.3d 1391, 1393-94 (9th Cir. 1993) (per

curiam). However, these cases are not controlling. As at least one district court has noted, these decisions are contrary to *Power*. *Merce v. Greenwood*, 348 F. Supp. 2d 1271, 1275 (D. Utah 2004) (following *Power* and rejecting *Hardy* and *Draper*). In this district, of course, *Power* is the controlling authority. Additionally, the pre-suit requirements at issue in *Hardy* and *Draper* were "notice of claim" requirements, which required only that a plaintiff give notice to defendants of an intent to bring suit. *See Bird v. Pioneers Hosp.*, 121 F. Supp. 2d 1321, 1324 n. 1 (D. Colo. 2000) (following *Power* and distinguishing *Hardy* and *Draper* because the pre-suit requirements in those cases were non-burdensome notice of claim requirements). As a practical matter, a bare notice of claim requirement conflicts only minimally with EMTALA's statute of limitations. In comparison, the more extensive procedures in W. Va. Code § 55-7B-6(b) require a plaintiff to wait thirty days after giving notice before filing suit, and to procure a screening certificate of merit—among other requirements. Thus, the MPLA's relatively extensive pre-suit procedural requirements directly conflict with Plaintiff's pursuit of his EMTALA action.

The MPLA also directly conflicts with Plaintiff's EMTALA disparate screening claim by imposing additional substantive conditions on his recovery. A physician providing a MPLA certificate of merit has to consider whether, and how, a plaintiff's medical care was below the applicable standard of care. The EMTALA screening cause of action requires a very different inquiry: not whether the screening met the applicable standard of care, but whether it was the same as that provided to other patients in the same facility. *Brooks*, 996 F.2d at 711. Thus, a plaintiff with a viable EMTALA screening claim could fail to acquire a MPLA certificate of merit if the care provided—although worse than that provided to other patients at the same facility—met the relevant

standard of care. In this scenario the state law requirement would directly conflict with the remedial purposes of EMTALA, and would be preempted. *See id*. at 715.

      In sum, Defendant argues that Plaintiff's claims must be dismissed because Plaintiff has not complied with the pre-suit requirements of the MPLA. However, the MPLA pre-suit requirements directly conflict with the Plaintiff's federal EMTALA claims, and are therefore preempted by 42 U.S.C. § 1395dd(f). Defendant's Motion to Dismiss is **DENIED**. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

         ENTER:     March 2, 2012

         ROBERT C. CHAMBERS
         UNITED STATES DISTRICT JUDGE